Bradbury, J.
The defendant in error admits that on August 30, 1881, he received from the plaintiff in error twenty bushels of oats, to be consumed by him, which shortly thereafter he was to return in kind; and he contends that soon after he had received the oats he performed his obligation by delivering to her an equal number of bushels of oats, of the same quality, as those he had received and consumed. The plaintiff in error denied their delivery, and upon this issue the parties went to trial. The transaction was not a bailment of the oats, but a sale, where payment was to be made in kind, which in law constitutes a barter.
True, a barter usually consists of an exchange of commodities differing from each other in kind, and doubtless, most frequently, mutual delivery of the respective articles occurs contemporaneously. These conditions, however, though the usual, are not necessary incidents of a barter. A transaction being equally a barter if goods of the same *112 kind are exchanged, and delivery by one party is to be made in the future, as though they were of different kinds and delivery made simultaneously by both parties when the bargain was made. The distinguishing feature of a barter is that g-oods are exchanged for goods instead of money. And to constitute a transaction a barter, it is no more essential that the delivery should be made by both parties at the time the bargain is made, than it is necessary, in order to constitute a sale; that the price should be paid contemporaneously with the delivery of the goods, which are the subject of the transaction.
Bouvier says of barter that “It differs from a sale in that a barter is always óf goods for goods; a sale is of goods for money, or for money and goods. In a sale there is a fixed price; in a barter there is not.” Vol. 1, page 223 ; 2 Encly. of Am. and Eng. Law, 128; Massey v. The State, 74 Ind., 368; Com. v. Davis, 12 Bush. (Ky.), 240.
As the transaction constituted a barter, the defendant’s obligation was discharged if he delivered to the plaintiff twenty bushels of oats of the quality of those he had received; and this was the question over which the parties contended.
Upon the trial in the court of common pleas of the issue respecting- the return of the oats, evidence was given tending to prove that about four weeks after the defendant had received the oats, he threshed, and measuring out an equal quantity of oats similar in quality to those he had received, sent them by his step-son, a youth of about 16 years of age, to the plaintiff in payment of those he had received from her; that the boy took the oats to the premises of the plaintiff and placed them in a bin which he found in her granary, *113 but gave no notice to her, or any one else about the premises, of what he had done; and that she had no knowledge of the return of the oats, if they were returned, until long after they had been sold or consumed. The evidence tended to prove that the granary in question contained at least two bins, one of which was used to store grain owned by the plaintiff alone, and the other used to store that owned by her and her tenant — a brother-in-law — or owned by him alone.
After the testimony was all in, her counsel requested the following propositions, among others, to be given to the jury:
“First — That in order for the defendant to establish by proof his allegations, that he delivered to the plaintiff twenty bushels of oats in full payment of the plaintiff’s claim set forth in the amended petition, he must satisfy your minds by a preponderance of evidence, that he actually presented the twenty bushels of oats to her for her inspection, and to give her an opportunity to accept or refuse to accept the twenty bushels of oats presented and offered in payment of her claim, and if such opportunity was not offered plaintiff and she did not accept said twenty bushels of oats in full payment of her claim against • defendant, the emptying of said twenty bushels of oats in a bin of oats in her grain house, in which bin there were a lot of other oats and without plaintiff’s knowledge or consent, and all of said oats were taken from said bin and disposed of before plaintiff had any knowledge or information that the defendant claimed to have emptied said oats in said bin in payment of the oats delivered by plaintiff to defendant on or about August 30, 1881, would not in law constitute a de *114 livery of the twenty bushels of oats to her, and would not in law be full payment of the claim of the plaintiff as set forth in her amended petition, and your verdict should be for the plaintiff.
11 Second — That if they find from the evidence in this case that defendant in attempting to deliver to plaintiff twenty bushels of oats in payment of the twenty bushels of oats that the defendant received of the plaintiff on or about the 30th day of August, 1881, did, without the knowledge or consent of plaintiff, or any one else acting- for her, place twenty bushels of oats in an oats bin, in plaintiff’s grain house, .and in which bin at the time, were a lot of other oats which belonged to A. J. Berry, and that before said plaintiff had any notice or information that defendant claimed to have placed said twenty bushels of oats in said bin in payment of said oats delivered by plaintiff to defendant; said Berry took all of said oats out of said bin and converted the same to his own use, that that would not be a .delivery to plaintiff, and their verdict should be for the plaintiff.”
The court refused to give either of these propositions to the jury, to which refusal plaintiff excepted ; nor did it supply the omission in the general charge.
By declining to give the last proposition, the court left the jury at liberty to find for the defendant, if they found that he, in fact, returned the oats in controversy to her granary; although without the knowledge or consent of plaintiff, he caused them to be placed in a bin therein, which contained oats • belonging to another person, whereby the grain thus returned was mingled with that of such other person, and afterwards consumed by him before she was informed of the *115 return. To state such a proposition is to refute it. Such a return constituted no delivery to the plaintiff. She had no knowledge of what had been done, neither was the grain deposited in a receptacle subject to her control, nor did she receive the slightest benefit from the attempted delivery. The natural result of such a delivery would be the consumption of the grain by the person into whose bin it had been placed. Upon what principle of law can this be held to exonerate the defendant? We know of none.
2. In refusing to give the first of the two propositions the jury were authorized to find for the defendant if he caused the oats to be deposited in plaintiff’s granary, in a bin containing other oats belonging to her, although it was done without her knowledge or consent.
By the terms of the contract between the oar-ties, the defendant was bound to pay in kind. There can be no payment unless the thing- tendered, be it money or goods, is accepted by the party to whom payment is due. Tender alone is not payment. It ordinarily stops the running- of interest] and, often, by statutory regulations, saves costs, but it does not discharge the obligation of the promisor or debtor.
Payment is consummated by an acceptance of the thing tendered and is incomplete until then. Property cannot be thrust upon a person without his consent, and the effect of payment is to transfer from the payor to the payee the title to the thing delivered and received.
“Payment is a mode of extinguishing obligations. It is an act calling for the exercise of will, of consent. To constitute a payment, money or some other valuable thing must be delivered by the *116 debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose.” 18 Encly. of Am. and Eng. Law, 150; Kingston Bank v. Gay, 19 Barb. (N. Y.), 459.
“Payment, in its largest sense, is the actual accomplishment of the thing that the party obliges himself to give, or to do, whatever that may be, although, in our acceptation, it is ordinarilyconfined to money engagements, and it is therefore the natural manner in which obligations are extinguished. When the obligation is to give something, the payment is accomplished when the property in the thing’ to be given is actually transferred to the creditor; and of course, in order to constitute the transaction a payment, there must be both a delivery by the debtor and an acceptance by the creditor, with the purpose on the part of the former to part from, and of the latter to accept of, the immediate ownership of the thing passed from the one to the other. In a payment, we ordinarily look only to theactof the party making it; but yet its legal import is an act in which the debtor tenders and the creditor accepts that which is offered. ” Thompson v. Kellogg, 23 Mo., 285; Vancleave v. Beach, 110 Ind., 269.
Acceptance of the thing tendered doubtless may be inferred from circumstances; but in order to hold a person to an implied acceptance, knowledge that the tender was made or the delivery attempted should be shown, unless under some peculiar and special circumstances or by some established custom, the obligee is bound to possess such knowledge; no such conditions or custom appear in the case under consideration. Before the plaintiff could rightfully be held bound to the consequences which follow even from a tender, she was entitled *117 to an opportunity to inspect the thing- tendered. How else could she ascertain whether it was of the quality and quantity which, by the terms of the contract, she was entitled to receive ? If the quality of the thing- tendered was inferior to that which the obligor was bound to render to her, or if the weight or measure was less than was her due, she was at liberty to rej eet it and the transaction would not constitute even a tender. In the very nature of things there can be no tender of a thing-unless the person, to whom the tender is made, has by himself or agent, knowledge of it. A tender is necessarily included in every payment; payment occurs whenever the tender is accepted. Tender is the act of the obligor, payment the joint act of the obligor and the obligee. If a transaction does not embrace every act essential to constitute a tender, it necessarily falls short of payment.
If in the case before us the defendant in error returned oats in the quality and ■ quantity he had received, and without notice to the plaintiff in error, deposited them in her granary, still the transaction did not fill the measure of the obligation he had incurred to her. This obligation, as we have already seen, was to pay in other oats of similar quality. He was not authorized to determine whether a sufficient quantity of oats of the proper quality had been returned. The rights of the plaintiff in error in this respect were equal to his rights. His duty was to offer, hers to accept or reject what he offered. He was bound to afford her an opportunity to accept or reject what he tendered in satisfaction of of his obligation; that she might exercise her rights in this respect understandingly, she was entitled to inspect the oats, both as regarded their *118 quality and quantity. Not only this',- but if the grain became her property, which it would do if the transaction was a payment, it was thereafter at her risk, and entitled to her care. In this view alone it is only reasonable that she should be advised of it, that the care necessary for its preservation could be given by her. If the defendant neglected to cause the plaintiff to be notified that the oats had been placed in her granary, he failed to do that which was necessary to constitute the transaction a payment, and must abide the consequences.

Judgment reversed and causes remanded for a new trial.